\_\_\_\_ FILED   \_\_\_ ENTERED
\_\_\_\_ LOGGED   \_\_\_\_\_ RECEIVED

10:16 am, Jul 13 2023
AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION FOR A WARRANT AUTHORIZING THE SEARCH OF 3 THURMONT COURT, APARTMENT 2D, NOTTINGHAM, MARYLAND 21236 | MISC. NO.   23-1812-ADC |
| IN THE MATTER OF THE APPLICATION FOR A WARRANT AUTHORIZING THE SEARCH OF A BLACK 2018 HONDA ACCORD BEARING MARYLAND LICENSE PLATE 4ET4745 | MISC. NO.   23-1813-ADC |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT**

I, Task Force Officer Corey Landing of the Drug Enforcement Agency (DEA), being duly sworn, depose and state as follows:

1. This affidavit is submitted in support of an application for warrants to search the following residence and vehicle:

    a. 3 Thurmont Court, Apt 2D, Nottingham, Maryland 21236 (hereinafter the **"TARGET LOCATION"**), a residence used by Adrian SWEENEY, further described in Attachment A-1; and

    b. A black 2018 Honda Accord bearing Maryland license plate 4ET4745 (**TARGET VEHICLE**), registered to Simple Car Rental and operated by Adrian SWEENEY, further described in Attachment A-2.

2. Based on evidence gathered to date, I believe the **TARGET LOCATION** and the **TARGET VEHICLE** are being used to store firearms and controlled dangerous substances (CDS).

1

3. Based on the facts set forth in this Affidavit, I submit that there is probable cause to believe that SWEENEY and others are engaged in a conspiracy to distribute controlled dangerous substances ("CDS") including marijuana, in violation of 21 U.S.C. § 846; distributing and possessing with the intent to distribute CDS, in violation of 21 U.S.C. § 841; and possession of firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c); (the "Target Offenses"). I further submit that there is probable cause to believe that evidence of the commission of the Target Offenses, contraband and/or property intended for use in committing a crime will be found at **TARGET LOCATION** and within the **TARGET VEHICLE.**

## AFFIANT EXPERTISE

4. I am a Task Force Officer ("TFO") with the Drug Enforcement Administration ("DEA") and am an "investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

5. I have been a TFO with the DEA since July 2007. I am currently assigned to the Baltimore City Police Department ("BPD") Anti-Crime Section and DEA Strike Force Group 3 of the Baltimore District Office.

6. Before this assignment, I was assigned to the Special Investigations Unit of the Violent Crime Impact Division and Organized Crime Division. In the past, I was assigned to the Mobile Enforcement Team, Northeast District Patrol, and Northeast District Flex unit working in a plainclothes capacity. My current assignment involves investigating illegal narcotics activity, as well as targeting violent offenders, drug organizations, and drug traffickers throughout the city of Baltimore.

7. I have attended specialized training offered by DEA, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), High Intensity Drug Trafficking Area ("HIDTA"), Maryland State Police, and the Pennsylvania National Guard that included investigative techniques of Controlled Dangerous Substances (hereinafter "CDS") investigation, CDS recognition, CDS packaging, firearms enforcement, and identification of hidden compartments that drug traffickers commonly use to conceal CDS and drug proceeds. Through these classes and seminars, I have obtained valuable experience in the methods of transporting, distributing, and concealing CDS, identifying proceeds from CDS, and identifying drug trafficking organizations.

8. I have also participated in numerous investigations that have utilized court-ordered interception of wire and electronic communications as an investigative tool. Therefore, I am familiar with the lawful use of electronic and wire surveillance equipment in investigations of distribution of CDS. Through these experiences, I have listened to numerous drug-related conversations and have become familiar with jargon related to the distribution of CDS. I have also debriefed numerous defendants, cooperating witnesses, and others who have had experience in the manufacturing, packaging, and distribution of CDS. Consequently, I am familiar with the phraseology and practices of those who abuse and illegally distribute CDS.

9. I have directly and/or indirectly participated in the arrest of numerous persons for violations of CDS laws, during which time officers have seized various amounts of heroin, fentanyl, cocaine, marijuana and other controlled substances. I have been involved in the preparation and/or execution of well over 100 search and seizure warrants.

10. I am also familiar with the prices and packaging and paraphernalia used to distribute and manufacture CDS. I have been personally involved in numerous investigations concerning the possession, manufacture, distribution and importation of controlled substances into the United

States of America. Through training and experience, I have become familiar with the operations of drug trafficking organizations.

11. Through my training and prior experience in narcotics trafficking investigations and arrests, I am familiar with the actions, traits, habits, and terminology utilized by narcotics traffickers. I am familiar with the ways in which drug traffickers conduct their business, including methods of importing and distributing narcotics, money laundering, the use of cellular telephones and the Internet to facilitate their illegal activities, and the use of numerical codes and code words to conduct narcotics transactions. Based on this familiarization, I know the following:

a. Drug trafficking is an ongoing and recurring criminal activity. As contrasted with crimes against persons, which tend to be discrete offenses, drug trafficking is an illicit commercial activity that is characterized by regular, repeated criminal activity.

b. Drug traffickers commonly compartmentalize members of their organization into discrete "cells," with specific members, responsibilities, and/or geographical territories assigned to each cell. In that regard, I know that members of one cell commonly are provided with information only about their specific cell's criminal activities, thus limiting the information about the overall organization, and ultimately frustrating law enforcement efforts to dismantle the entire organization.

c. Drug traffickers often maintain on hand large amounts of both drugs and currency in order to maintain and finance their ongoing drug business, as well as paraphernalia used in the manufacture, packaging, preparation, and weighing of CDS in preparation for trafficking, and that drug traffickers maintain these items where they have ready access to them.

d. Cellular telephones are an indispensable tool of the drug trafficking trade. Drug traffickers use cellular telephones, push-to-talk telephones, Short Message Service ("SMS"),

Multimedia Message Service ("MMS"), electronic-mail, and similar electronic means and/or devices, often under fictitious names or names other than their own, in order to maintain contact with other conspirators and drug traffickers. In addition, drug traffickers will often change or drop their cellphones following the arrest of a member of their Drug Trafficking Organization, or at random times in order to frustrate law enforcement efforts.

        e.      Drug traffickers often swap vehicles with other conspirators, use vehicles with dealer/interchangeable registration plates, use rental vehicles, use multiple vehicles, and use vehicles registered in names other than their own in order to frustrate law enforcement efforts.

        f.      Drug traffickers use uninhabitable locations (for example, vacant dwellings, storage lockers, garages, etc.), often under another person's name, as "stash locations" for the storage of drugs and currency, as well as to process and package drugs for distribution. Your affiant also knows that houses and/or apartments within neighborhoods are often utilized as stash houses.

        g.      Drug traffickers often maintain financial records and financial instruments related to their drug transactions and the profits derived from those transactions including, but not limited to, currency, bank checks, cashier's checks, Western Union receipts, money orders, stocks, bonds, jewelry, precious metals, and bank and real estate records. Such documents are frequently maintained where the traffickers have ready access to them, including in their residences. Drug traffickers frequently maintain books, records and other documents that identify and contain the names, addresses and/or telephone numbers of associates involved in their drug-trafficking or money-laundering activities, including, but not limited to: address books, telephone books, rolodexes, and notes reflecting telephone numbers and email addresses, documents or other records relating to state court proceedings involving other co-conspirators, and audiotape

recordings of conversations, including those made over telephone answering machines or voicemail.

        h.      Drug traffickers often place communications devices, vehicles and other assets in names other than their own to avoid detection as well as seizure of these items by law enforcement officials, and that even though these items are in another entity's or person's name, the drug dealers actually own and continue to use these devices and assets and exercise dominion and control over them.

        i.      Drug traffickers often have unexplained wealth, assets, and a high standard of living with no reported income which is probative evidence of crimes involving drug trafficking.

        j.      Firearms are tools of the trade for drug traffickers. Among other purposes, firearms are used to protect CDS, CDS proceeds, and territories under a drug trafficker's control. Drug traffickers often store firearms where they have ready access to them, including in their homes, vehicles, at stash houses, or the homes of relatives or associates.

12.      Because this Affidavit is being submitted for the limited purpose of establishing probable cause for search warrants as noted in paragraph 1, I have not included every detail of every aspect of the ongoing investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause to search the noted locations. I have not, however, excluded any information known to me that would defeat a determination of probable cause. The information contained in this Affidavit is based upon my personal knowledge, my review of documents and other evidence, and my conversations with other law enforcement officers and other individuals. All conversations and statements described in this Affidavit are related in substance and in part unless otherwise indicated. Summaries and descriptions, including quotations of recorded conversations are based on a review of audio recordings and draft

transcripts thereof. In some instances, as indicated below, specific quotations are based on information obtained from confidential sources who participated in the conversations.

**PROBABLE CAUSE**

13.     On May 31, 2023, Adrian SWEENEY, and several co-conspirators were charged by indictment with conspiracy to distribute and possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 846; and distribution and possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841. SWEENEY was also charged with possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c). On the same day the United States District Court for the District of Maryland issued a warrant for SWEENEY's arrest.

14.     During the course of the investigation, investigators identified 3 Thurmont Court, Apt 2D, Nottingham, Maryland (the **TARGET LOCATION**) as the primary residence of Dykiera SCOTT, SWEENEY's girlfriend. Based on previous physical surveillance, investigators also believed that SWEENEY was using the **TARGET LOCATION** to store currency and CDS.

15.     In June 2023, investigators conducted several spot checks at the **TARGET LOCATION** and observed SWEENEY's vehicle, a black Honda Accord bearing Maryland Tag 4ET4745 (the **TARGET VEHICLE**) parked in front of the **TARGET LOCATION**. The most recent surveillance of the **TARGET VEHICLE** at the **TARGET LOCATION** was on June 28, 2023.

16.     On June 28, 2023 at approximately 6:30 a.m., investigators saw SWEENEY exit the apartment building that includes the **TARGET LOCATION,** walk to SCOTT's car, retrieve a bag from the car, and then reenter the apartment building. Soon after, investigators saw SCOTT exit the building, enter her vehicle and leave the area.

17.     At approximately 7:15 a.m., investigators knocked and announced their presence at the **TARGET LOCATION** but received no response.  Approximately one hour later, investigators obtained a key to the apartment, opened the door, and observed SWEENEY inside of the residence.  SWEENEY was ordered out of the apartment, placed into custody and transported from the immediate area.  No other individuals were located inside of the apartment.

18.     SWEENEY was advised of his *Miranda* rights, and acknowledged he understood his rights.  SWEENEY was then asked if there was any CDS or weapons inside the **TARGET LOCATION.** SWEENEY replied that there was a half-pound of marijuana and a handgun inside the apartment.  SWEENEY explained that the handgun belonged to his girlfriend and is registered to her.  SWEENEY further said that everything in the apartment was his and that SCOTT did not know about his (SWEENEY's) criminal activity.

19.     At approximately 10:50 a.m., an investigator and his law enforcement K-9 conducted a drug scan of the exterior of the **TARGET VEHICLE**.  The K-9 alerted for the presence of CDS on the rear side driver door of the vehicle.  Over the course of this investigation, I have repeatedly seen SWEENEY operating this vehicle and as recently as August 2022.  I have observed the **TARGET VEHICLE** parked at locations associated with SWEENEY over the last week and as noted previously, the **TARGET VEHICLE** was located in the parking lot of the **TARGET LOCATION** on June 28, 2023.

## CONCLUSION

20.     Based upon the information presented herein, I submit that there is probable cause to believe that there is presently located within **TARGET LOCATION** and the **TARGET VEHICLE,** evidence of violations of 21 U.S.C. §§ 841 and 846, 18 U.S.C. § 924(c).

21.     WHEREFORE, in consideration of the facts presented, I respectfully submit that there is probable cause to support the issuance of a warrant to search the **TARGET LOCATION** (described in Attachment A-1), and the **TARGET VEHICLE** (described in Attachment A-2)**,** for the items described in Attachment B.

Respectfully submitted,

*Corey Landing*
Task Force Officer Corey Landing
Drug Enforcement Administration

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 41 this __28th__ day of June, 2023

*A. David Copperthite*
The Honorable A. David Copperthite
United States Magistrate Judge
District of Maryland